# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARGONAUT INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | |
| **FALCON V, L.L.C., ET AL.** | **NO. 20-00702-BAJ-SDJ** |

## RULING AND ORDER

This appeal challenges the Bankruptcy Court's opinion and order rejecting Appellant Argonaut Insurance Company's ("Argonaut") request for a judgment declaring that obligations set forth in certain contracts governing pre-bankruptcy surety bonds issued by Argonaut to Appellee Falcon V, L.L.C. and its affiliates ORX Resources, L.L.C. and Falcon V Holdings, L.L.C. (collectively, the "Reorganized Debtors") were assumed (and therefore continuing) under the Reorganized Debtors' confirmed Chapter 11 Plan of Reorganization. The dispositive issue is whether the parties' surety bond contracts are "executory contracts," as that term is defined by the U.S. Court of Appeals for the Fifth Circuit. In short, if they are not executory contracts, they may not be assumed, and Argonaut may not enforce their terms against the Reorganized Debtors under the Plan.

For reasons to follow, the Court agrees with the Bankruptcy Court's determination that the parties' surety bond contracts are not executory contracts, and therefore cannot be assumed or enforced against the Reorganized Debtors. Accordingly, Argonaut's appeal fails, and the Bankruptcy Court's opinion and order will be **AFFIRMED**.

## I. RELEVANT BACKGROUND

The facts are uncontested. The Reorganized Debtors engage in oil and gas exploration and development, and provide services for oil and gas properties. Typically, the Reorganized Debtors lease the oil and gas properties on which they operate and, accordingly, must provide surety bonds to their lessors to secure payment and performance, including obligations related to plugging, abandonment, and decommissioning of wells.

Argonaut provides surety bonds and, from time to time, issued surety bonds securing the Reorganized Debtors' obligations to various mineral rights lessors. Notably, once issued, Argonaut's surety bonds are irrevocable.

The instant dispute revolves around four such bonds, issued in various amounts to lessors Hilcorp Energy I, Chevron, the State of Louisiana, and the United States of America (collectively, the "Surety Bond Program"). (Doc. 11-1 at 769). Each surety bond was accompanied by a standard general indemnity agreement between Argonaut and the Reorganized Debtors. These indemnity agreements set forth various continuing obligations owed by the Reorganized Debtors to Argonaut, including that the Reorganized Debtors shall make premium payments to Argonaut, and provide indemnification to Argonaut should a lessor make a claim on a bond. Significantly, however, the indemnity agreements do *not* set forth *any* obligations owed by Argonaut to the Reorganized Debtors. (*Id.* at 771-76).

On May 10, 2019, the Reorganized Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By all indications, the parties intended

2

that the Surety Bond Program would survive the Reorganized Debtors' bankruptcy. Indeed, at the outset of the bankruptcy proceedings, the Reorganized Debtors sought (and obtained) approval to continue paying bond premiums to Argonaut, describing the Surety Bond Program as a necessary cost of preserving the estate:

> Often, statutes or ordinances require the Debtors to post surety bonds to secure such obligations. Failure to provide, maintain or timely replace its surety bonds may prevent the Debtors from undertaking essential functions related to its operations.

(Doc. 11-1 at 6). Thereafter, the Reorganized Debtors submitted a Disclosure Statement specifically affirming their intent to "maintain all bonding currently in place after the Effective Date." (Doc. 11-1 at 45).

Yet, despite these representations, the parties did not seek a determination that the Surety Bond Program was an executory contract capable of being assumed by the Reorganized Debtors. Indeed, throughout the bankruptcy proceedings, the parties took positions at odds with this characterization. In their First Amended Disclosure Statement, later approved by the Bankruptcy Court, the Reorganized Debtors described Argonaut's claims as "contingent and unliquidated … [to] be dealt with in connection with Confirmation." (Doc. 11-1 at 42). Argonaut, for its part, stated in its Proof of Claim that the Surety Bond Program was a "financial accommodation" *not capable* of being assumed.

> It is [Argonaut]'s position that any General Indemnity Agreement between [Argonaut] and any Debtor or non-Debtor affiliate may not be assumed and assigned, for among other reasons, because such agreement constitutes a "financial accommodation" under 11 U.S.C. § 365(c)(2).

(Doc. 11-1 at 783).

3

On October 10, 2019, the Bankruptcy Court issued its Order confirming the Reorganized Debtors' Plan of Reorganization (the "Plan"). (Doc. 11-1 at 740). Most relevant here, the Plan provides that the Reorganized Debtors are deemed to have assumed any executory contract that was not a) previously rejected; b) the subject of a pending motion to reject; or c) listed in a schedule to the Plan as an executory contract to be rejected. (Doc. 11-1 at 430-31). Argonaut's Surety Bond Program is not listed on the Plan's Schedule of executory contracts. (*See id.* at 590-610).

Argonaut did not object to confirmation of the Plan. And, for four months after the Reorganized Debtors' discharge from bankruptcy, the Surety Bond Program continued without issue. In February 2020, however, the Reorganized Debtors failed to make premium payments on the Hilcorp and Chevron bonds. Argonaut responded by demanding that the Reorganized Debtors obtain releases of all the bonds, or provide additional collateral, as required by the indemnity agreements. The Reorganized Debtors rebuffed Argonaut's demand, asserting that it violated the discharge injunction. Thereafter, Argonaut filed a motion with the Bankruptcy Court seeking a declaration that the Surety Bond Program is among the executory contracts deemed assumed under the Plan. (Doc. 11-1 at 742 (the "Motion")).

On September 22, 2020 the Bankruptcy Court issued its Memorandum Opinion denying Argonaut's Motion. (Doc. 11-1 at 814). First, the Bankruptcy Court determined that Argonaut's Motion failed because the Surety Bond Program is *not* an executory contract under the Fifth Circuit's *Countryman* test, and therefore cannot be assumed under the Plan. (*Id.* at 820-24). In the alternative, the Bankruptcy

4

Court ruled that even if the Surety Bond Program *is* an executory contract, it is nonetheless a non-assumable financial accommodation. (*Id.* at 824-27). The Bankruptcy Court did not expressly address Argonaut's final alternative argument, that regardless whether the Surety Bond Program is an executory contract, it "passed through" the Reorganized Debtors' bankruptcy and remains enforceable.

On October 1, 2020, the Bankruptcy Court issued its final order denying relief. (Doc. 11-1 at 970). This appeal followed.

## II. LAW AND ANALYSIS

### A. Issues Presented

Argonaut asserts three errors on appeal:

1. The Bankruptcy Court erred as a matter of law by determining that the Surety Bond program is not an executory contract under the Bankruptcy Code.

2. The Bankruptcy Court erred as a matter of law by determining, in the alternative, that even if the Surety Bond Program is an executory contract, it cannot be assumed with Argonaut's consent.

3. The Bankruptcy Court erred by failing to consider whether the Surety Bond Program passed through the Reorganized Debtors' bankruptcy, and remains enforceable against the Reorganized Debtors.

(Doc. 11 at 9-10).

For reasons explained below, the Court agrees with the Bankruptcy Court that that the Surety Bond Program is *not* an executory contract, and will affirm on that

basis. Accordingly, the Court does not address Argonaut's second assignment of error.

## B. Standard of Review

On appeal, the district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004). Mixed questions of fact and law are reviewed *de novo*. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

Here, the dispositive issue—whether the Surety Bond Program is an executory contract under the Bankruptcy Code—is a mixed question of law and fact requiring *de novo* review.

## C. Discussion

### i. The Surety Bond Program Is Not An Executory Contract And Therefore Not Capable Of Being Assumed By The Reorganized Debtors

The Bankruptcy Code empowers a trustee or debtor-in-possession to assume *or* reject executory contracts and unexpired leases. "This provides a way for a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018) (quotation marks omitted).

Curiously, perhaps, the Bankruptcy Code does not define the term "executory contract." Nonetheless, legislative history gives insight into its meaning:

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.

H.R. REP. 95-595, 347 (1978), *reprinted at* U.S.C.C.A.N. 5963, 6303-04. Reflecting this legislative history, courts have long held that, as a general proposition, "a contract is executory if it is a contract 'on which performance remains due to some extent on both sides.'" *In re James River Coal Co.*, No. 306-0411, 2006 WL 2548456, at *3 (M.D. Tenn. Aug. 31, 2006) (Echols, J.) (quoting *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 n.6 (1988)).

As have multiple other Circuits, the Fifth Circuit has adopted the *Countryman* test to determine whether a contract is executory. *See Matter of Provider Meds, L.L.C.*, 907 F.3d at 851 n.17. Under this analysis, "a contract is executory if performance remains due to some extent on both sides *and* if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *Id.* at 851 (emphasis added).

The relationship among Argonaut as surety, the Reorganized Debtors as principal, and the Lessors as claimants is tripartite. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 954 (8th Cir. 2004) ("Bonds are contracts, and suretyship status is created through a tripartite agreement whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee." (quotation marks omitted)). Here, the Reorganized Debtors contracted with Argonaut to issue irrevocable performance bonds that would cover the claims of the third-party lessors. In exchange, the Reorganized Debtors agreed to pay premiums and indemnify Argonaut for claims should Argonaut be required to satisfy

7

them. Thus, the Indemnity Agreement and bond must be construed together.

Applying the *Countryman* test to this tripartite agreement, this Court has little trouble determining that the Surety Bond Program is *not* an executory contract. Indeed, it fails each prong of *Countryman's* two-part test. For present purposes, the Court *assumes* that the Surety Bond Program requires ongoing performance from the Reorganized Debtors to Argonaut, as set forth in the indemnity agreements.[1] Under any stretch, however, Argonaut owes *no* additional performance to the Reorganized Debtors after posting the surety bonds. Indeed, Argonaut's only remaining duty is a contingent obligation to the lessors.[2] In other words, as between the Reorganized Debtors and Argonaut, the parties' obligations under the Surety Bond Program flow in one direction, *from* the Reorganized Debtors *to* Argonaut. The *Countryman* test requires more for an executory contract: performance must remain due on *both* sides. *Matter of Provider Meds, L.L.C.*, 907 F.3d at 851.

Second, and perhaps more problematic, Argonaut's bonds are irrevocable. Thus, the Reorganized Debtors failure to perform does *not* create a material breach that excuses Argonaut's performance, as required by the second prong of the

---

[1] Even this assumption is problematic, as the Reorganized Debtors ongoing obligation to make premium payments is *not* performance sufficient to create an executory contract. *In re Coal Stripping, Inc.*, 215 B.R. 500, 503 (Bankr. W.D. Pa. 1997) (Fitzgerald, B.J.) ("[W]hen the only obligation under a contract is to pay money, the contract is not executory.").

[2] The Surety Bond Program is governed by Texas law. Under Texas law, a bond surety does *not* owe its principal an ongoing common law duty of good faith and fair dealing. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 281–82 (Tex. 1998)

8

*Countryman* test. *See Matter of Provider Meds, L.L.C.*, 907 F.3d at 851. Instead, the Reorganized Debtors' failure to perform expressly *triggers* Argonaut's obligations under the surety bonds, *i.e.* to pay and/or perform the Reorganized Debtors' obligations related to plugging, abandonment, and decommission. Thus, again, the Surety Bond Program is not an executory contract under the *Countryman* test, and Argonaut's appeal fails. *See, e.g., In re Maxon Eng'g Servs., Inc.*, 324 B.R. 429, 432 (Bankr. D.P.R. 2005) (Vaughn, C.J.).

The parties have not directed the Court's attention to any decisions within the Fifth Circuit applying the *Countryman* test to a surety bond contract, and this Court's own research also has not revealed any such cases. Still, however, this Court's decision is consistent with well-reasoned decisions from outside the Circuit, which consistently hold that a surety bond contract is not executory under the *Countryman* test, for the reasons explained above. *E.g., In re James River Coal Co.*, 2006 WL 2548456, at *4 (determining that a surety bond contract was not executory under *Countryman* test: "[The debtor's] obligation under the Bond agreements was to pay the premiums and [the surety's] obligation was to post Bonds. The Bonds were posted and irrevocable. As such [the surety] owed no further performance to [the debtor]; its only remaining duty in regard to the Bonds is with the Commonwealth of Kentucky [the third-party obligee]."); *accord In re All Phase Elec. Contracting, Inc.*, 409 B.R. 272, 275 (Bankr. D. Conn. 2009) (Shiff, B.J.); *In re Maxon Eng'g Servs., Inc.*, 324 B.R. at 432; *In re Coal Stripping, Inc.*, 215 B.R. 500, 502–03 (Bankr. W.D. Pa. 1997) (Fitzgerald, B.J.); *but see In re Evans Prod. Co.*, 91 B.R. 1003, 1006 (Bankr. S.D. Fla.

9

1988) (Britton, C.J.) (determining without explication that a surety bond contract "was clearly executory").

Argonaut and amici, The Surety & Fidelity Association of America,[3] plainly disagree with this analysis, contending that the *Countryman* test it is too constrained because it was tailored to "*bilateral* contracts, not *multilateral* contractual relationships," and "gives no practical effect to the surety's (and the Debtors') unperformed duties to the obligees under the bonds." (*See* Doc. 11 at 12-14; *see also* Doc. 18 at 9-10). Point taken. Yet, it is not for this Court to decide the applicable test for executory contracts. The Fifth Circuit has endorsed the *Countryman* test, which looks to the relationship between the debtor and the party seeking to enforce the contractual obligations—here, the surety. *Matter of Provider Meds, L.L.C.*, 907 F.3d at 851. Applying the *Countryman* test, as it must, the Court determines that the Surety Bond Program is not an executory contract.

### ii. The Bankruptcy Court Did Not Err By Failing To Consider Whether The Surety Bond Program Passed Through The Bankruptcy Proceedings, And Remains Enforceable Against The Reorganized Debtors

The only remaining issue is whether the Bankruptcy Court erred by failing to expressly address whether the Surety Bond Program passed through the Bankruptcy

---

[3] The Surety & Fidelity Association of America (the "Association") represents more than 425 insurance companies that write 98 percent of surety bonds and fidelity bonds in the United States. (Doc. 18 at 6). By order dated September 24, 2021, the Court approved the Association's request to submit a brief in support of Argonaut's position on appeal. (Doc. 17).

Proceedings, and remains enforceable against the Reorganized Debtors.[4] Again, the Bankruptcy Court did not err, because the pass-through (or "ride-through") doctrine applies exclusively to *executory* contracts that are "neither assumed nor rejected at bankruptcy." *See ASARCO, L.L.C. v. Montana Res., Inc.*, 858 F.3d 949, 959 (5th Cir. 2017) ("Executory contracts that are not assumed or rejected 'ride through' the bankruptcy unaffected by the bankruptcy proceedings."). It does *not* apply to nonexecutory contracts, such as the Surety Bond Program. *See id.* ("Unlike executory contracts, nonexecutory contracts—like option contracts—are just assets or liabilities that must be disclosed along with other interests; they are not subject to assumption, rejection, or the ride-through doctrine."). As such, Argonaut's invocation of the pass-through doctrine is unavailing, and, again, its appeal fails.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the judgment of the Bankruptcy Court be and is hereby **AFFIRMED**.

Baton Rouge, Louisiana, this 29th day of September, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[4] Again, having determined that the Surety Bond Program is not an executory contract, the Court does not address the Bankruptcy Court's alternative holding that even if the Surety Bond Program *is* executory, it is a non-assumable financial accomodation.